```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT


JONATHAN S. SEILER,              :
     Plaintiff,                  :
                                 :
     v.                          :   Case No. 3:17cv1017(AWT)
                                 :
SCOTT SEMPLE, et al.             :
     Defendants.                 :
```

### RULING ON MOTION FOR SUMMARY JUDGMENT

On June 19, 2017, the plaintiff, Jonathan S. Seiler, a former inmate of the Connecticut Department of Correction ("DOC"), filed a complaint pro se pursuant to 42 U.S.C. § 1983 seeking damages and injunctive relief against eight DOC officials. The plaintiff claimed that the defendants violated his First Amendment rights under the United States Constitution by denying him access to certain periodicals and magazines while he was confined at Cheshire Correctional Institution ("Cheshire").

On July 3, 2017, the court issued an Initial Review Order permitting the plaintiff's First Amendment claim to proceed against two defendants: Warden Scott Erfe and DOC Commissioner Scott Semple. See Initial Review Order [Doc.#7]. The court limited the action to the plaintiff's claim regarding the rejection of the magazine "Easyrider," which he had requested while he was confined at Cheshire.

See id. at 4.  The court dismissed the claims against all other defendants.  Defendants Erfe and Semple answered the complaint on July 25, 2018.

On October 23, 2018, the two remaining defendants filed the instant motion for summary judgment on the plaintiff's sole remaining claim regarding the denial of the "Easyrider" magazine.  They contend that summary judgment is warranted because the plaintiff has failed (1) to establish the defendants' personal involvement in the alleged constitutional deprivation, and (2) to exhaust his administrative remedies before commencing suit.  See Defs.' Mem. of Law in Supp. of Mot. for Summ. J. ("Defs.' Mem.") [Doc.#41-1] at 1.  In the alternative, the defendants argue that they are shielded from liability by the doctrine of qualified immunity.  The plaintiff has not responded to the defendants' motion.  For the following reasons, the defendants' motion is being granted.

I. **Legal Standard**

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is "entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" if it "might affect the outcome of the suit under the governing law" and is "genuine" if "a

reasonable jury could return a verdict for the nonmoving party" based on it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Dister v. Continental Group, Inc., 859 F.2d 1108, 1114 (2d Cir. 1988) (mere existence of alleged factual dispute will not defeat summary judgment motion). The moving party may satisfy this burden "by showing – that is pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." PepsiCo, Inc. v. Coca-Cola Co., 315 F.3d 101, 105 (2d Cir. 2002) (per curium) (internal quotations omitted; citations omitted).

When a motion for summary judgment is supported by documentary evidence and sworn affidavits and "demonstrates the absence of a genuine issue of material fact," the nonmoving party must do more than vaguely assert the existence of some unspecified disputed material facts or "rely on conclusory allegations or unsubstantiated speculation." Robinson v. Concentra Health Servs., Inc., 781 F.3d 42, 44 (2d Cir. 2015) (citation omitted). The nonmoving party "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." Id.; see also First Nat. Bank of Ariz. v. Cities Service Co., 391 U.S. 253, 289 (1968) (nonmoving party must submit sufficient evidence supporting factual

dispute that will require factfinder to resolve differing versions of truth at trial).

In reviewing the record, the court must "construe the evidence in the light most favorable to the non-moving party and to draw all reasonable inferences in its favor." Gary Friedrich Enters., L.L.C. v. Marvel Characters, Inc., 716 F.3d 302, 312 (2d Cir. 2013) (citation omitted). If there is any evidence from which a reasonable factual inference could be drawn in favor of the non-moving party for the issue on which summary judgment is sought, then summary judgment is improper. See Security Ins. Co. of Hartford v. Old Dominion Freight Line Inc., 391 F.3d 77, 83 (2d Cir. 2004).

Where one party is proceeding pro se, the court must read his papers liberally and interpret them "to raise the strongest arguments that they suggest." Willey v. Kirkpatrick, 801 F.3d 51, 62 (2d Cir. 2015) (internal quotation marks and citation omitted). Despite this liberal interpretation, however, "[u]nsupported allegations do not create a material issue of fact" and cannot overcome a properly supported motion for summary judgment. See Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000), cert. denied, 540 U.S. 811 (2003).

## II. **Facts**

The court draws the following facts from the defendants' Local Rule 56(a)(1) Statement ("Defs.' Stmt.") [Doc.#41-3], which the plaintiff has not contested,[1] and the supporting exhibits.

The plaintiff was confined at Cheshire from October 21, 2016 until June 1, 2017. Defs.' Stmt. ¶ 1; Aff. of Boyd-Carter ("Boyd-Carter Aff."), Defs.' Ex. C [Doc.#41-6] ¶ 7. He was released from DOC custody on September 29, 2017. See Notice of Change of Address [Doc.#28].

Defendant Erfe was the warden at Cheshire during the time the plaintiff was confined there. Defs.' Stmt. ¶ 2; Aff. of Scott Erfe ("Erfe Aff."), Defs.' Ex. A [Doc.#41-4] ¶ 3. Neither Erfe nor Commissioner Semple review mail or periodicals received by inmates at Cheshire. Defs.' Stmt. ¶¶ 3, 12; Erfe Aff. ¶ 6. Pursuant to DOC Administrative Directive ("Admin. Dir.") 10.7, "the Unit Administrator or designee shall review the individual publication prior to the rejection of that publication." Defs.' Stmt. ¶ 5; Erfe

---

[1] Rule 56(a)1 of the District of Connecticut Local Rules of Civil Procedure provides that "[a]ll material facts set forth in [the moving party's Local Rule 56(a)1 Statement] and supported by the evidence will be deemed admitted unless controverted by the statement required to be filed and served by the opposing party in accordance with Local Rule 56(a)2." Because the plaintiff has not opposed the motion for summary judgment with a Local Rule 56(a)2 Statement to counter the facts stated in the defendants' Local Rule 56(a)1 Statement, the court deems admitted all facts in the defendants' Statement.

5

Aff. ¶ 5; DOC Admin. Dir. 10.7, Defs.' Ex. C, p.2. Cheshire has mail officers who review incoming periodicals. Defs.' Stmt. ¶ 6; Erfe Aff. ¶ 5.

DOC policy provides that no incoming periodical can be rejected without individual review. Defs.' Stmt. ¶ 16; Erfe Aff. ¶ 14; DOC Admin. Dir. 10.7, Defs.' Ex. C, p.32. "The Unit Administrator or designee may not establish an excluded list of publications." DOC Admin. Dir. 10.7(4)(N)(2), Defs.' Ex. C, p.32. Thus, there is no list of periodicals to be rejected without review at Cheshire, Defs.' Stmt. ¶¶ 13-14, and Erfe has never established or permitted such a list or policy. Defs.' Stmt. ¶ 15; Erfe Aff. ¶¶ 15-17.

If the mail officer at Cheshire determined that an incoming mail item presented a question with respect to safety or security, he or she would refer the item to the Media Review Board ("MRB") for further review. Defs.' Stmt. ¶ 7; Erfe Aff. ¶ 8. Neither Erfe nor Semple sit on the MRB. Defs.' Stmt. ¶¶ 8-9; Erfe Aff. ¶ 9. The MRB will then review the item, decide whether it should be rejected, and then notify the Unit Administrator or designee of the decision. Defs.' Stmt. ¶ 10; Erfe Aff. ¶ 8. One possible reason for rejecting a periodical is that it contains

6

sexually explicit material.  Defs.' Stmt. ¶ 11; DOC Admin Dir. 10.7, Defs.' Ex. C, p.27.

If the Unit Administrator, its designee, or the MRB rejects a publication, a notice of rejection must be sent to the inmate identifying reason why the publication was rejected.  Defs.' Stmt. ¶ 17; DOC Admin. Dir. 10.7(4)(N)(3), Defs.' Ex. C, p. 32.  The inmate may appeal the decision within fifteen days of receipt of the rejection letter in accordance with DOC Admin. Dir. 9.6. Defs.' Stmt. ¶ 20; DOC Admin. Dir. 10.7(4)(N)(3), Defs.' Ex. C, p.32.

The plaintiff received five rejection notices regarding the "Easyrider" magazine on January 17, 2017, January 24, 2017, March 6, 2017, March 22, 2017, and April 17, 2017.  Publication Rejection Notices, Defs.' Ex. B [Doc.#41-5].  Each notice indicated that the magazine was rejected because it contained sexually explicit material, which "poses a threat to the security, good order or discipline of the facility, facilitates criminal activity, or harasses staff."  Id.

The plaintiff filed a grievance from the first rejection notice on January 18, 2017.  Defs.' Stmt. ¶ 32; Inmate Administrative Remedy, Defs.' Ex. C, pp. 529-30. That grievance was returned without disposition on January

7

20 because the plaintiff did not attach the rejection notice regarding the magazine. Inmate Administrative Remedy, Defs.' Ex. C, pp. 529-30; Boyd-Carter Aff. ¶ 24. The notice returning the grievance without disposition notified the plaintiff that he could still resubmit his grievance with the attached rejection notice within the fifteen-day time frame provided by DOC Admin. Dir. 10.7 and 9.6. Inmate Administrative Remedy, Defs.' Ex. C, pp. 529-30; Boyd-Carter Aff. ¶ 24. The plaintiff refiled the January 18 grievance and contended that he did not have access to the rejection notice because he was confined in a restrictive housing unit ("RHU"). Defs.' Stmt. ¶ 39; Inmate Administrative Remedy, Defs.' Ex. C, pp. 533-34. Once again, the grievance was returned without disposition because the plaintiff did not attach the rejection notice. Defs.' Stmt. ¶ 39; Inmate Administrative Remedy, Defs.' Ex. C, p. 532. Without the rejection notice, the administrative remedies coordinator is unable to determine whether the grievances were timely filed or consider the merits of the plaintiff's claim. Defs.' Stmt. ¶ 34; Boyd-Carter Aff. ¶ 25. From January 2017 to May 2017, the plaintiff did not file any complete grievances regarding the rejection of the magazine. Defs.' Stmt. ¶¶ 44-45; Boyd-Carter Aff. ¶ 18.

On February 2, 2017, the plaintiff was housed in an RHU at Cheshire. Boyd-Carter Aff. ¶ 28. However, on January 18, 2017, the date of his first grievance challenging the rejection of the magazine, the plaintiff was not confined in an RHU. Id.

### III. Analysis

The defendants argue that they are entitled to summary judgment on the plaintiff's First Amendment claim based on the denial of the magazine because the plaintiff has failed (1) to present any evidence that either defendant was personally involved in the rejection of the magazine, and (2) to properly exhaust his administrative remedies. Defs.' Mem. at 9-14. In the alternative, they argue that they are shielded from liability by the doctrine of qualified immunity. The court agrees with the defendants' first two arguments and, therefore, grants summary judgment without reaching their alternative argument.

#### A. Personal Involvement

"It is well settled . . . that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (internal quotation marks omitted); see also Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009) (plaintiff must plead that each

government official, through his own actions, violated the Constitution); Grullon v. City of New Haven, 720 F.3d 133, 138 (2d Cir. 2013) ("[I]n order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, inter alia, the defendant's personal involvement in the alleged constitutional deprivation"). Supervisory officials may not be held personally liable for damages under § 1983 for the wrongful actions of their subordinates under a theory of respondeat superior. See Monell v. Department of Social Services; 436 U.S. 658, 694 (1978); Johnson v. Glick, 481 F.2d 1028, 1034 (2d Cir. 1973).

> The liability of a supervisor under § 1983 can be shown in one or more of the following ways: (1) actual direct participation in the constitutional violation, (2) failure to remedy a wrong after being informed through a report or appeal, (3) creation of a policy or custom that sanctioned conduct amounting to a constitutional violation, or allowing such a policy or custom to continue, (4) grossly negligent supervision of subordinates who committed a violation, or (5) failure to act on information indicating that unconstitutional acts were occurring. See Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir.1995) (citing Wright v. Smith, 21 F.3d 496, 501 (2d Cir.1994)); see also Brock, 315 F.3d at 165-66.

Hernandez v. Keane, 341 F.3d 137, 145 (2d Cir. 2003)

In this case, the plaintiff has failed to present any evidence that defendants Erfe and Semple were personally involved in the rejection of the "Easyrider" magazine at Cheshire in January 2017. Both defendants have presented

10

evidence that neither of them participated in any decision to reject the magazine, nor did they create any policy or established periodical rejection list which directed the rejection of the magazine. Defs.' Stmt. ¶¶ 3-9, 12-14.; Erfe Aff. ¶¶ 5-13. There is no evidentiary support for the plaintiff's allegation that the administration at Cheshire "has established a 'list' of periodicals to be rejected without review." Compl. ¶ 7. Nor is there any evidence in the record that could support a conclusion that either defendant is liable as a supervisor by acting or failing to act so as to provide as basis for liability under any of the other four bases for supervisory liability. Because the plaintiff has not presented any evidence in support of his claim against the defendants, no reasonable jury could conclude that the defendants are personally liable for the deprivation of his First Amendment rights.[2]

### B. Exhaustion of Administrative Remedies

The plaintiff also has not established that he exhausted his administrative remedies with respect to the denial of the "Easyrider" magazine prior to commencing this

---

[2] Although the plaintiff need not establish personal involvement to obtain injunctive relief against the defendants, his claim for injunctive relief is moot in light of his release from DOC custody. See Neary v. Naqvi, No. 3:14-CV-1631 (VLB), 2017 WL 3205471, at *8 (D. Conn. July 27, 2017); McQuilkin v. Central New York Psychiatric Center, No. 9:08-CV-00975 (TJM/DEP), 2010 WL 3765847 at *23 (N.D.N.Y. Aug. 27, 2010); Pugh v. Goord, 571 F. Supp. 2d 477, 489 (S.D.N.Y. 2008).

11

action.  Thus, summary judgment is also appropriate on exhaustion grounds.

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), provides in relevant part that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies are available are exhausted." In enacting § 1997e, Congress sought to afford prison officials time and opportunity to address complaints internally and reduce the quantity, and improve the quality, of prisoner suits.  See Porter v. Nussle, 534 U.S. 516, 524-25 (2002).  Exhaustion of administrative remedies is mandatory for any prisoner challenging the conditions of his confinement.  See id. at 523.

In Woodford v. Ngo, 548 U.S. 81, 93 (2006), the United States Supreme Court held that exhaustion under the PLRA requires "proper exhaustion," meaning full compliance with administrative procedures and deadlines.  See also Ruggiero v. County of Orange, 467 F.3d 170, 176 (2d Cir. 2006).  "An 'untimely or otherwise procedurally defective administrative grievance' . . . does not constitute proper exhaustion." Snyder v. Whittier, 428 F. App'x 89, 91 (2d Cir. 2011) (quoting Woodford, 548 U.S. at 83-84).  To

properly exhaust a claim, a prisoner must comply with the prison grievance procedures, including utilizing each step of the administrative appeal process. See id. (citing Jones v. Bock, 549 U.S. 199, 218 (2007)).

"An inmate may be excused from the exhaustion requirement only if administrative remedies were not in fact available." Shehan v. Erfe, No. 3:15-cv-1315 (MPS), 2017 WL 53691, *6 (D. Conn. Jan. 4, 2017) (citing Ross v. Blake, __ U.S. __, 136 S. Ct. 1850, 1858 (2016)). The Supreme Court has identified three circumstances in which an administrative remedy cannot be used by an inmate to obtain relief:  (1) "the administrative remedy may operate as a 'dead end,' such as where the office to which inmates are directed to submit all grievances disclaims the ability to consider them . . . [(2)] the procedures may be so confusing that no ordinary prisoner could be expected to 'discern or navigate' the requirements . . . [a]nd [(3)] prison officials may 'thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'" Id. (quoting Ross, 136 S. Ct. at 1859-60).

In this case, the defendants have presented evidence that the plaintiff filed only two grievances regarding the rejection of the "Easyrider" magazine, both of which were

13

returned without disposition because he failed to attach the required rejection notice. Defs.' Stmt. ¶¶ 32-37; Inmate Administrative Remedies, Defs. Ex. C, pp. 529-34. Although the written notices returning the grievances explained that the plaintiff could resubmit them with the proper attachment, the plaintiff never resubmitted them correctly. Defs.' Stmt. ¶¶ 35-38; Boyd-Carter Aff. ¶ 26. Without the required attachment, the administrative remedies coordinator was unable to determine whether his grievances were timely filed or examine the merits of his contention. See Boyd-Carter Aff. ¶ 25. The plaintiff has not presented any evidence to dispute the defendants' contention that he failed to properly exhaust his administrative remedies. Therefore, the defendants are also entitled to summary judgment on the grounds of failure to exhaust administrative remedies.

## IV. Conclusion

Based on the foregoing, the court concludes that the defendants are entitled to summary judgment in their favor, and their motion for summary judgment [Doc.#41] is hereby GRANTED.

The Clerk is directed to enter judgment in favor of the defendants and close this case.

It is so ordered.

Dated this 5th day of December 2018 at Hartford, Connecticut.

                                              /s/AWT
                                     Alvin W. Thompson
                             United States District Judge